IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TIFFANY CHANDLER                                                        PLAINTIFF


         v.                            CIVIL NO.        10-5064


MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                              DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).


**I.     Procedural Background:**

Tiffany Chandler (hereinafter "Claimant") initially protectively filed an application for a Period of Disability and Disability Insurance Benefits on October 26, 2006. (T.55) The Claimant also protectively filed an application for Supplemental Security Income on October 26, 2006. (T. 55) Both applications alleged a disability onset date of October 10, 2005. (T. 55) The Social Security Administration denied the claims initially on December 20, 2006 and upon re-consideration on March 26, 2007. (T. 55) On April 26, 2007, the Claimant timely requested a

hearing. (T. 55) The hearing was held on June 12, 2008, in Fayetteville, Arkansas, before the Honorable Penny M. Smith (hereinafter "the ALJ"). (T.8-47) The Claimant appeared and testified at the hearing. (Id.). The ALJ issued an unfavorable decision on September 24, 2008. (T. 55-65).

Thereafter, on October 7, 2008, the Claimant filed a request with the Appeals Council for review of the ALJ's adverse decision. (T. 4) On February 19, 2000, the Appeals Council denied the Claimant's request for review, affirming the ALJ's decision that Claimant was not disabled within the meaning of the Social Security Act. (T. 1-3)

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

A.  ALJ's Relevant Findings:

The ALJ determined that the Plaintiff had the following severe impairments: Status Post-Fracture of lower limb (right ankle fracture) and mood disorder. (20 CFR 404.1520(c) and 416.920(c)) (Id.), that the Plaintiff's lower limb fracture has more than a minimal effect on the claimant's physical ability to do basic work activities and is therefore severe consistent with SSR 85-28. The claimant's ankle fracture could reasonably be expected to cause pain and limit the claimant's ability to stand and/or walk. (Id.). The ALJ also determined that the Plaintiff's mood disorder has more than a minimal effect on the claimant's physical ability to do basic work activities and is therefore severe consistent with SSR 82-28. The claimant's depression could reasonably be expected to impair the claimant's ability to maintain concentration, persistence, and pace. (Id.).

The ALJ found that the Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.925 AND 416.926) (T. 58.) and that the Plaintiff had the residual functional capacity to perform **sedentary work** as defined in 20 CFR 404.1567(a) and 416.967(a) except that while the claimant can frequently lift and/or carry less than 10 pounds, and 10 pounds occasionally, push and/or pull within the limits for lifting and/or carrying,  stand (with normal breaks) for one hour and walk (with normal breaks) for one hour in an eight hour work day, sit (with normal breaks) for a total of about eight hours in an eight hour work day, she cannot climb ramps and stairs, scaffolds, ladders, or ropes, and she cannot drive motor vehicles as part of her work. The claimant cannot crawl, kneel or balance, and she should not be exposed to unprotected heights, dangerous equipment/machinery, temperature extremes, extreme wet conditions, or extreme vibration. The claimant can only occasionally

-4-

stoop, bend or crouch. The claimant must work where instructions are simple and non-complex; interpersonal contact with co-workers and the public is incidental to the work performed; the complexity of tasks is learned and performed by rote; the work is routine and repetitive; there are few variables; little judgment is required; and the supervision required is simple, direct, and concrete. (T. 59-60)

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

**B.  RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  *Id.*  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

-5-

**1. Ankle Injury:**

On October 10, 2005, the Plaintiff injured her ankle in an motor vehicle accident. (Id, T. 173-179.) In the ER at Northwest Medical Center, the Plaintiff was told she had sprained her right ankle and it was placed in a splint with direction to have the ankle examined by an orthopedic surgeon within a week. (Id.).  The Plaintiff sought treatment with Dr. Christopher Arnold, an orthopedic surgeon, on November 23, 2005, when her pain increased. (Id, T. 170.) Dr, Arnold performed x-rays that revealed a right talus fracture with some residual displacement. (T. 172).  Dr. Arnold informed the Plaintiff of the high risk of a nonunion, malunion, post-traumatic arthrosis and avascular necrosis. (T. 170).

The Plaintiff was seen by Dr. Dean E. Bright, D.P.M. on November 29, 2005 who diagnosed the Plaintiff with Displace Grade III body fracture of the right talus with ankle subluxation and early state AVN present. (T. 188).  Dr.  Bright advised that surgical intervention may be necessary and "consideration for getting obstetrician clearance for a CT scan. (Id.).  At this time the Plaintiff was a single mother with a young child and 15 weeks  pregnant. On November 30, 2005 Dr. Bright made a note that he had contacted Dr. Bradford's office and informed him of the seriousness of the Plaintiff's accident that "required immediate potential clearance and obstetrician work up for her potential surgical intervention" but he was informed that they "would not be able to see her until her appointed time frame on the 12th of December due to the non-insured status of Ms. Chandler and her appointment through the health department. (T. 185).

While it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a prescribed course of treatment, or to seek medical attention, such failure may be

excused by a claimant's lack of funds. *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984); *Jackson v. Bowen*, 866 F. 2d 274, 275 (8th Cir. 1989). "Although it is permissible in assessing the severity of pain for an ALJ to consider a claimant's medical treatment and medications, the ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of a lack of finances." *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) (citing *Tome v. Schweiker*, 724 F.2d at 714). Economic justifications for lack of treatment can be relevant to a disability determination. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992). In this instance there was an improper initial diagnosis, lack of funds, lack of insurance and the Plaintiff was pregnant at the time of injury all of which contributed to the Plaintiff's inability to obtain prompt treatment.

Dr. Bright saw the Plaintiff again on January 2, 2006 after a CT scan had been performed. Dr. Bright stated that "[D]ue to the complications and the multiple fragments and comminuted fracture of her right talus, as well as combining the potential for post-op complications and her pregnancy aspects, I have informed her I do not feel comfortable performing her surgery..." (T. 183). On November 6, 2007, Dr. Bright provided a medical source statement that the Plaintiff's reaching, handling, feeling, speaking, seeing and hearing would be affected by her impairment, which he described as severe degenerative bone/joint condition of her right foot. (T. 62, 291-293) Dr. Bright felt that the Plaintiff's walking and standing would be limited "significantly and that she would **not be** able to climb, kneel, crouch, stoop, balance or crawl. (T. 292).

Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart,* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. §

404.1527.

Dr. Bright also felt that the Plaintiff reaching, handling, feeling, speaking, seeing and hearing would be affected by her impairment.  In the notes section he does not state how these functions would be impaired by the Plaintiff's ankle injury nor does he substantiate medically why they would be impaired. A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted).   The court notes however the ALJ's responsibility to develop the record particularly where there are apparent inconsistencies in the treating physicians opinion. The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made).

On December 19, 2006 a Physical Residual Functional Capacity Assessment was performed by Dr. Bill Payne. (T. 195-202).  Dr. Payne found that the Plaintiff could lift up to 20 pounds occasionally, 10 pounds frequently and stand and/or walk as well as sit for about 6 hours in an 8 hour workday.  He also felt the Plaintiff could push and/or pull without restrictions. (T. 196).  He felt that she had no postural limitations. (T. 197).  Dr. Payne's findings were reviewed

by Dr. Steve Owens on March 23, 2007 (T. 205) who concurred in the assessment.   This finding was in complete opposition to every treating physician and it is clear that the ALJ gave no consideration to the only RFC evaluation that is in the record. We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement).

On May 16, 2007 the Plaintiff was seen by Dr. Jason Pleimann, M.D. who reviewed the Plaintiff's x-rays and determined that there was "clear evidence of avascular necrosis of the talus". (T. 211).  Avascular necrosis (AVN) is a process that is due to the temporary or permanent loss of the blood supply to an area of bone. As a result, the bone tissue dies and the bone collapses. If AVN involves the bones of a joint (e.g.: the talus) it often leads to destruction of cartilage, resulting in arthritis and pain.  See www.mdmercy.com  Dr. Pleimann felt that the Plaintiff's ankle would ultimately have to be fused but that she should wait as long as possible to have that done. (Id.).

Dr. Alice Martinson, a state agency examining physician and orthopedist, evaluated the Plaintiff on October 16, 2007, reporting that the Plaintiff had generalized pain in her right ankle after walking less than 100 feet. (T. 280) She expressed her opinion that the Plaintiff was suffering from plantar flexion contracture and avascular necrosis of the talus. (T. 150, 281) She suggested that it is possible that removal of the anterior bony block and lengthening of the heel cord would place the claimant's foot in a better position for weight bearing noting that the Plaintiff will still eventually need a plantalar fusion which should be postponed as long as the

pain symptoms were controlled. (Id.) Dr. Martinson assigned the Plaintiff a Total Body Impairment Rating of twenty-five percent based on the plantar flexion contracture and vascular necrosis of the talus. (Id. ) Dr. Martinson also completed a Medical Source Statement of the Ability to do Work Related Activities, using the term "work" as defined by Social Security. (T. 151, 282-287) She stated that the Plaintiff could lift 10 pounds over a six-hour period during an eight-hour work day; occasionally lift 11 to 20 pounds, and never lift anything over 20 pounds. Additionally, the Plaintiff could continuously carry up to 10 pounds over 2/3 of a work day (6.3 hours) and occasionally carry up to 20 pounds up to 1/3 of a work day (2.3 hours). She should never carry anything weighing more than 50 pounds. (Id.) Dr. Martinson also stated that the Plaintiff could stand and walk at one time without interruption for only 5-10 minutes. (T. 152) She noted that the Plaintiff could sit at one time without interruption about 2 hours. Dr. Martinson found that during an 8 hour work day the Plaintiff could stand and walk one hour but could sit for 8 hours. She stated that the Plaintiff would probably require the use of a cane within 1-2 years. (T. 283) She also stated that the Plaintiff had limitations that would last at least 12 consecutive months or had lasted at least 12 consecutive months. (Id.) Dr. Martinson noted that the Plaintiff could perform preparations for simple meals, care for her own personal hygiene, ambulate without a wheelchair, and travel without a companion with assistance. (Id.).  Dr. Martinson felt that the Plaintiff would never be able to climb stairs, ladders or do anything that required her to balance but that she could occasionally stoop, kneel, crouch and crawl. (T. 285).

There was a clear difference of opinion between Dr. Martinson's opinion and Dr. Bright's opinion concerning the Plaintiff ability to stoop, kneel, crouch and crawl.  The ALJ adopted the opinion of Dr. Martinson in formulating the Plaintiff's RFC and determined that the Plaintiff

cannot crawl, kneel or balance, and she should not be exposed to unprotected heights, dangerous equipment/machinery, temperature extremes, extreme wet conditions, or extreme vibration but that the Plaintiff **could occasionally stoop, bend or crouch**. T. 59 This ruling was crucial because it was factored into the hypothetical question given to the VE initially (T. 40) and incorporated by reference subsequently. (T. 40-41).   A person would need to stoop only occasionally to perform substantially all sedentary and light jobs. Social Security Rule No. 83-14 at 6 (1983); Social Security Rule No. 85-15 at 18 (1985).  *Robinson v. Sullivan*  956 F.2d 836, 841 (C.A.8 (Neb.),1992).

        We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement).   The court believes that the ALJ failed to properly consider the assessment of Plaintiff's treating doctor.   The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

        In addition the court notes the progressive nature of the Plaintiff's injury. The Plaintiff contends that, in contravention of the medical evidence, the ALJ failed to address the progressive nature of her impairments, particularly her vascular necrosis of the talus. The failure of an ALJ to consider the effects the progressive nature of a claimant's impairment may have on that claimant's ability to work has been considered reversible error. *See Bowman v. Barnhart*, 310

-11-

F.3d 1080 (8th cir. 2002).

In November 2005 Dr. Bright indicated that the Plaintiff had early stage AVN (T. 188). By May 2007 Dr. Pleimann indicated that the Plaintiff had clear evidence of avascular necrosis of the talus and that he did not expect her to improve but to only get worse. (T. 212). On August 1, 2007 the Plaintiff presented to the Washington Regional Medical Center complaining of pain and the inability to ambulate/bear weight. (T. 217). Both Dr. Martinson and Dr. Pleimann agreed that the Plaintiff would ultimately have to have the ankle fused and all doctors agree that the Plaintiff will ultimately have to walk with a cane.

The court believes that further development of the record is necessary to determine the Plaintiff's capacity to stoop, bend or crouch and that an RFC assessment should be obtained from the Plaintiff's treating physicians.

### 2. Mental Impairments:

Evaluating mental impairments is often more complicated than evaluating physical impairments. *Obermeier v. Astrue*, Civil No. 07-3057, 2008 WL 4831712, at *3 (W.D.Ark. Nov. 3, 2008). With mental impairments, evidence of symptom-free periods does not mean a mental disorder has ceased. Id. Mental illness can be extremely difficult to predict, and periods of remission are usually of an uncertain duration, marked with the ever-pending threat of relapse. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001).

When the Plaintiff filed her application for disability on November 6, 2006 she stated that the condition that limited her ability to work was an ankle problem due to a car accident. (T. 119).  She reported no changes on her next Disibitly Report. (T. 130).  On her next Disability Report she indicated that her ankle was worse. (T. 138).  The fact that the plaintiff did not allege

-12-

any mental impairment as a basis for her disability in her application for disability benefits certainly can be significant, even if the evidence of a mental impairment was later developed. See *Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir.1993); *Dunahoo v. Apfel*, 241, F. 3d 1033, 1039 (8th Cir. 2001).  However, in this instance, it is clear that the Plaintiff's depression and anxiety were alleged to have been the direct result of her substantial physical injury and resulting pain and not a preexisting condition.

On September 13, 2007 the Plaintiff called Ozark Guidance, Inc. complaining of anxiety and depression. (T. 277).  She was seen for a "brief psychiatric consultation" on September 19, 2007 by Dr. Edwin C. Jones and was diagnosed with Major Depression and assigned a GAF score of 40[1].  The Plaintiff was placed on Desyrel [2] 100mg, #30 and Celexa [3] 40mg. (T. 278-279). Depression, diagnosed by a medical professional, is objective medical evidence of pain to the same extent as an X-ray film. See *1208 20 C.F.R. §§ 404.1508, 404.1528. *Cox v. Apfel*  160 F.3d 1203, 1207 -1208 (C.A.8 (Mo.),1998)

Dr. Jones next sees the Plaintiff on October 16, 2007 and notes that "the medication is working" and that the Plaintiff was not having any trouble with side effects. (T. 289). Impairments that can be controlled effectively with medication are not disabling for the purpose

---

[1]A GAF of 31 through 40 represents "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood...." DSM-IV-TR at 34.

[2]Desyrel (trazodone hydrochloride) is an antidepressant.  See www.drugs.com

[3]Celexa is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). It works by restoring the balance of serotonin, a natural occuring substance found in the brain, which helps to improve certain mood problems. See www.drugs.com

of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin.*  439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

On March 11, 2008 the Plaintiff presented to Northwest Arkansas Free Health Clinic complaining of nervousness and depression. T. 294 She indicated that she was on Celexa 20mg and Trazadone 25mg. She was prescribed Celexa 40mg and Trazadone 25mg. The court notes that Dr. Jones had placed the Plaintiff on the 40mg does of Celexa previously and evidently the Plaintiff had self reduced the dose to 20mg.  In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins*, 177 F.3d at 693.  Dr. Jones did note a possible low grade ADD present in the Plaintiff but that would not have changed his treatment. (T. 289)

The ALJ attempted to make  allowances for the Plaintiff's complaints of depression and anxiety in his hypothetical to the VE but he did so without any mental RFC assessment.  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Since there is no Mental Residual Functional Capacity examination in the record the court believe remand is necessary to allow the ALJ to further develop the record in this regard.

**C.  Subjective Complaints of Pain:**

At her hearing, the Plaintiff testified that she needs help with housekeeping, cleaning, and

-14-

shopping. (T. 25) She leans on the cart when she goes grocery shopping. (Id.) She testified that her right leg from the knee down had lost one third of the muscle and that her foot is permanently tilted downward about two or three inches so much so that her heel stays off the floor, and she has to walk on the tiptoes and balls of her feet. (Id.) She stated her right ankle was in chronic constant pain that stays at a seven or eight in level of severity without medication (Id.) She takes six to nine ibuprofen daily to manage her pain (T. 26, 27) She cannot run after her two year old baby. (Id.) She can only walk up a few stairs at a time. (Id.) She cannot stand for more than five minutes. (T. 28) Her lack of balance causes her to fall. (Id.) She cannot walk more than 100 feet on even terrain without support. (T. 29)  She cannot ambulate effectively. (T. 154) She is unable to use her right foot with any dexterity, with no peripheral, side-to-side movement. (T. 155) She has an inability to climb or go down stairs, walk up ramps, walk on even terrain, or use her right foot for driving. (Id.) She experiences severe chronic pain in her right ankle and leg; in her right hip; arthritis in her right ankle; insomnia; chronic fatigue; chronic depression; and chronic anxiety. (T. 156) She has limitations on concentration, persistence, and pace due to chronic pain, depression and anxiety. (T. 155)

The ALJ found that the Plaintiff's medical condition could reasonably be expected to produce symptoms of pain, however "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity assessments.

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ is required to take into account the following factors in evaluating the

credibility of a claimant's subjective complaints:  (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.  *See id.*  The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart,* 363 F.3d 731, 738 (8th Cir.2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.*  In the present case, the ALJ failed to acknowledge or discuss the factors in his credibility assessment of plaintiff.

The only Polaski factor that the ALJ discussed was the precipitating and aggravating factor.  The ALJ went on at length to state the number of times in the record that the ALJ felt the Plaintiff had not followed medical advice.  Initially the ALJ pointed out that the Plaintiff walked on her foot after the injury and did not see a doctor until 5 weeks after the accident.  The ALJ does not mention the mis-diagnosis which was performed at the time of injury when the ER performed an x-ray of the Plaintiff's ankle and showed no acute fracture (T. 175).  The Plaintiff told Dr. Bright that the ER just told her there was no fracture and it was just a sprain. She admitted taking the splint off and walking on her leg and the pain subsequently increased until she could no longer walk on it. (T. 186). The fact that the Plaintiff was  mis-diagnosed was not discussed by the ALJ nor did the ALJ consider the fact that the Plaintiff was alone and 15 weeks pregnant with a small child at home.

Notwithstanding the Plaintiff's behavior, the medical fact is undisputed that the Plaintiff suffered a displaced Grade III body fracture of the right talus with ankle subluxation, (T. 188),

that she has clear evidence of avascular necrosis of the talus (T. 211) and that the prognosis for any improvement is not good and the only possibly treatment is a fusion which all doctors agree should be postponed for as long as possible.   There is absolutely no medical evidence that would justify discounting the credibility of the Plaintiff's allegations of pain, nor is there any medical evidence that any action after the initial five week delay from the time of the accident to the time of proper diagnosis would have made any difference in the outcome of the Plaintiff's medical condition. Thus, the court believes the ALJ erred in assessing the Plaintiff's credibility.

**IV.     Conclusion:**

      Accordingly, the court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

      Dated 16th day of June 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE